IN THE MATTER OF FREDERICK W. HARDT, JUDGE OF THE MUNICIPAL COURT OF THE TOWNSHIP OF EVESHAM, COUNTY OF BURLINGTON.

Argued November 9, 1976—Decided January 28, 1977.

Mr. *Paul G. Levy,* Assistant Attorney General, argued the cause for designated counsel (*Mr. William F. Hyland,* Attorney General of New Jersey, designated counsel).

Mr. *George F. Kugler, Jr.,* argued the cause for respondent (*Messrs. Archer, Greiner and Read,* attorneys).

PER CURIAM. This case involves removal of a municipal judge by the Supreme Court in accordance with *N. J. S. A.* 2A:1B–1 *et seq.* and *R.* 2:14–1. Investigatory proceedings concerning the performance of Frederick W. Hardt as a municipal judge of Evesham Township were held by the Supreme Court's Advisory Committee on Judicial Conduct. *R.* 2:15–8. Upon conclusion of the investigation, including a formal hearing at which the respondent testified, the Committee recommended that proceedings be instituted for his removal as a judge (one committee member recommended a reprimand). Thereupon this Court caused a complaint to be filed and issued an order to show cause why respondent should not be removed from office and requiring the filing of an answer within 30 days. *R.* 2:14–2. The order to show cause also designated the Attorney General or his representative to prosecute the matter, *N. J. S. A.* 2A:1B–4, before a three judge panel. *N. J. S. A.* 2A:1B–7.

A hearing was held before that panel on July 1, 1976. The parties stipulated that all the evidence, including exhibits, produced in the proceedings before the Advisory Com-

mittee on Judicial Conduct be admitted into the record. In addition, the respondent and five character witnesses testified. After making detailed factual findings, the judicial panel found beyond a reasonable doubt, *N. J. S. A.* 2A:1B–9, that the respondent had violated Canons 1, 2 and 3 of the Code of Judicial Conduct. We have reviewed all the evidence and have arrived at the same conclusion.

The facts are essentially undisputed, the respondent having admitted almost all the allegations of the complaint. On October 10, 1974 Muriel Mansmann received a traffic ticket from Patrolman Haines for speeding on Route 73 in Evesham Township. The charge was driving 64 miles per hour in a 50 mile speed zone. The summons was returnable on November 6 at 7:00 P.M. before the Evesham Municipal Court.

Miss Mansmann was employed by the law firm of Maressa, Shoemaker & Borbe. She had been Mr. Maressa's secretary for 17 years. Since she expected to enter the hospital around the return date for the summons, Miss Mansmann called the Evesham Municipal Court clerk's office and adjourned the case to December 18. In addition, Joseph Leedom, Chief of Police in the Township, testified that he received a telephone call on November 6 from someone in Mr. Maressa's office requesting that he arrange for the adjournment. This he did. Miss Mansmann confirmed the adjournment by letter dated November 7 over Mr. Maressa's signature. She entered the hospital on November 8 or 9.

Anna Ferry, clerk of the Evesham Municipal Court, and Joyce Harper, deputy clerk, testified Chief Leedom came into the office and requested that the Mansmann matter be placed on the calendar of November 20. The matter was listed and included in the court schedule for that day. The format of the schedule set forth beneath the name of each police officer those matters with which he was involved. A copy of the schedule was posted at police headquarters and listed only one case beneath Officer Haines' name, that of Muriel Mansmann.

Officer Haines had worked the midnight to 8:00 A.M. shift on November 20. When he came off duty, he examined the list and found that both his and Miss Mansmann's names were scratched off. Thinking that the case had been postponed or that a guilty plea had been entered and a fine paid, Haines left.

On November 20, respondent Judge Frederick W. Hardt began court at 9:00 A.M. The clerk was seated to the right of Judge Hardt. The deputy clerk sat at the far left side of the dais where a tape recording machine was located. She was in charge of the sound recording device. Microphones were located in front of the bench, where defendants usually stood, on the bench, and in front of counsel.

Proceedings continued into the afternoon until *only* the clerk, Anna Ferry, the deputy clerk, Joyce Harper, the Municipal Prosecutor, Robert Weishoff, and the respondent were present. The tape recorder was operative and the transcript reads as follows:

THE COURT: Muriel J. Mansmann?

Muriel J. Mansmann. Mr. [*sic*] Mansmann. I have a summons that alleges a violation of the provisions of 39:4-98C. How do you plead to the charge?

MISS MANSMANN: Not guilty.

THE PROSECUTOR: Your Honor, may it please the Court, in this particular matter the officer is not available. There has been a prior notice of not guilty plea and I would, therefore, be forced at this time to, I guess, not put in any evidence and let the Court —

THE COURT: You're requesting a continuance which I will deny. As to being an inability on the part of the State to move, I will direct a verdict of not guilty be entered.

THE PROSECUTOR: Thank you.

The parties agreed that the transcript contained some minor errors. The only error of some significance is that it was the Prosecutor who initially called Miss Mansmann's name. Simultaneously, he beckoned to Joyce Harper, the deputy clerk, to come forward and she appeared before the center microphone. When Judge Hardt asked how she pleaded, Weishoff whispered to her to respond not guilty, which she did.

Judge Hardt then announced that he would deny a continuance and direct a verdict of not guilty. He completed the back of the summons under the section entitled court action by writing in under finding "N.G.", inserted the date, and signed his name.

That closed the matter until some months later when the County Prosecutor investigated the proceedings. When initially questioned by the Supreme Court's Advisory Committee on Judicial Conduct, Judge Hardt had no independent recollection of the incident. However, he has never denied the facts recounted above as to what occurred before him. There was no evidence that he knew in advance that any fraud or ticket fixing was about to occur. At the hearings before the three judge panel and before this Court he has insisted that the entire affair was a "farce" and that there was simply some "clowning around". We are satisfied, however, and find that the record clearly and convincingly demonstrates that he permitted himself to be utilized and become a part of a ticket fixing attempt.

The New Jersey Constitution, Art. VI, § VI, par. 4, provides, in addition to impeachment of judges of the Superior and County Courts, that such judges "shall also be subject to removal from office by the Supreme Court for such causes and in such manner as shall be provided by law." Until the enactment of *N. J. S. A.* 2A:1B–1 *et seq.* in 1970, there was no statute which created a comprehensive scheme for the removal of judges of inferior courts, including magistrates. Enactment of *N. J. S. A.* 2A:1B–1 *et seq.* prescribed such a scheme. *See generally In re Mattera,* 34 *N. J.* 259, 268 (1961). For a critique of the statute, see M. Draper, *Discipline and Removal of Judges,* 94 *N. J. L. J.* 397 (1971). The statutory grounds of removal are misconduct in office, willful neglect of duty or other conduct evidencing unfitness for judicial office, and incompetence. *N. J. S. A.* 2A:1B–2. Proceedings may be instituted by either house of the Legislature, the Governor or this Court. *N. J. S. A.* 2A:1B–3. Hearings may be held before the Supreme Court en banc, or

three justices or judges, or a combination thereof, designated by the Chief Justice. *N. J. S. A.* 2A:1B–7. The final decision is ours. We must be satisfied beyond a reasonable doubt that there is cause for removal, *N. J. S. A.* 2A:1B–9, after our independent review of the record.

■ Respondent claims that absent evil intent removal is not warranted. We cannot agree. Misconduct in office and conduct evidencing unfitness for judicial office subvert the judicial process and, irrespective of motive, the end result is the same — irreparable damage to the judicial system. Incorporating into the statutory scheme an evil or corrupt intent requirement would thwart the salutary purposes of the removal statute.

Respondent attempts to minimize his misconduct since he was unaware in advance of any plot and considered the entire incident a joke. But this minimization evaporates when the following light is thrown on the episode: his incorrect completion of the summons, his signature and stamp of approval thereon, his failure thereafter to do anything to correct or rectify it, his knowledge that Joyce Harper stood before him — not Muriel Mansmann, and his awareness that the Prosecutor's statements were inaccurate. These are clearly uncontradicted elements of misbehavior.

■ Furthermore, respondent knew that the defendant's failure to appear did not justify a finding of not guilty. *R.* 7:6–3(b) provides that upon a defendant's failure to appear, "the court shall either issue a warrant for his arrest or mail a notice to him. . . ." Statements in defense or mitigation of penalty may be asserted by affidavit, but only after the court has determined that it would be an undue hardship on the defendant to appear in person and the defendant has waived in writing his right to be present at the trial. *R.* 7:6–6(a). Neither of these conditions was met here. Unquestionably respondent is chargeable with knowledge of the rules governing the court. *In re Sgro,* 63 *N. J.* 538, 540 (1973).

Respondent's conduct was, moreover, in direct violation of an administrative directive sent to the Judges of the Municipal Courts with respect to dismissals of complaints where a police officer is the complainant. Municipal Court Bulletin Letter, #4/5–73, May 17, 1973 stated:

### DISMISSALS FOR LACK OF PROSECUTION

If the complaining witness fails to appear, the judge should not automatically dismiss the complaint, especially if the complainant is a police officer. The judge should check with the court clerk or municipal prosecutor as to any notice given to the complainant and an attempt to contact the complainant should be made immediately. Before dismissing a complaint for lack of prosecution, the judge should consider all factors, including the seriousness of the charge, so there is no miscarriage of justice. In appropriate cases, the judge may fix a new trial date.

If an officer did not appear and the case is dismissed for lack of prosecution, the judge should, in writing, so notify the Chief of Police or officer in charge of the State Police Barracks, or the person in charge of the particular enforcement agency and request a written explanation. If there are any problems of communication between the court and enforcement agencies regarding appearances by officers, the judge should see that they are corrected. When warranted, the judge may refer the matter to the County Prosecutor or the Attorney General for an investigation.

Respondent, knowing that Miss Mansmann did not appear, falsely certified on the summons that Miss Mansmann was not guilty and permitted the record to be closed. He violated the Court Rules and administrative directives.

Respondent's conduct violated Canons 1, 2 and 3 of the *Code of Judicial Conduct*. Particular reference is made to Canon 2, "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities." Paragraph A of the Canon states that a judge "should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The Commentary of the American Bar Association Special Committee on Standards of Judicial Conduct to that Canon states in part: "Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must

avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny." *Code of Judicial Conduct,* American Bar Association, 1972. The A.B.A.'s *Standards Relating to the Function of the Trial Judge,* Approved Draft, 1972, caution the judge to "avoid conduct on his part which tends to demean the proceeding . . .", § 6.4, and to "require attorneys to respect their obligations as officers of the court to support the authority of the court and enable the trial to proceed with dignity." § 6.5.

These principles enunciated in the Canons and the A.B.A. Standards have been the criteria for our judiciary for many years and adherence thereto is demanded in the municipal courts (where the greatest numbers of people received their introduction to the judicial system) at least as rigorously as in the upper courts.

We have heretofore referred to the essential link of the municipal court in our judicial system, *In re Mattera,* 34 *N. J.* 259, 266 (1961), and expressed our concern for proceedings in that court in *In re Spitalnick,* 63 *N. J.* 429 (1973) as follows:

> Nowhere can the community be more sensitive to the regularities — and irregularities — of judicial administration than at the local level. While on the grand scale of events a traffic violation may be of small significance, the corruption of judicial administration of a Municipal Court is of paramount importance. Such conduct, visible and apparent to the community, destroys the trust and confidence in our institutions upon which our entire governmental structure is predicated. We cannot and will not tolerate members of the profession subverting judicial integrity at any level, for the damage is irreparable. [*Id.* at 432].

Chief Justice Vanderbilt in *In re Stevens,* 20 *N. J.* 177, 179–180 (1955) commented:

> Every judge, including the magistrates of the municipal courts, by force of his own example and, when necessary, by resort to the power to hold in contempt, has the means to insure and is responsible to see that proceedings in his court are conducted in such manner as to engender respect for law.

Respondent's conduct as a judge cannot be countenanced. We find beyond a reasonable doubt that there is cause for his removal. *N. J. S. A.* 2A:1B–9. He is herewith ordered removed forthwith as magistrate of the municipal courts of the Borough of Pemberton, Township of Pemberton and Township of Lumberton.[1]

Since full hearings have been held and all pertinent facts have apparently been adduced, it is appropriate that we consider the discipline to be imposed on respondent as a member of the bar. Respondent's improprieties are obvious, but the transaction constituted a single aberration and not part of a course of conduct. We also recognize his otherwise unblemished record as a member of the bar and his general reputation for integrity and high character. Under all the circumstances we are of the opinion that in his status as a member of the bar he should be and he hereby is reprimanded, subject to the following. Since respondent was not put on notice that discipline was to be considered with respect to his status as a lawyer, if he desires to present evidence or be heard further on this facet of the matter, we shall entertain an application in that regard upon written demand within ten days from the date hereof.

*For removal from office*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.

## ORDER

A complaint and order to show cause why JUDGE FREDERICK W. HARDT should not be removed from judicial office having issued pursuant to *R.* 2:14 and *N. J. S. A.* 2A:1B–1 *et seq.,* and this Court having determined that cause for removal exists beyond a reasonable doubt;

---

[1] The record indicates that he is no longer magistrate of the Township of Evesham.

It is hereby ORDERED that, pursuant to *N. J. S. A.* 2A:1B–9, said JUDGE FREDERICK W. HARDT be removed from the office of judge of the municipal courts of the Borough of Pemberton, the Township of Lumberton and the Township of Pemberton, effective immediately, except for the conclusion of matters reserved for decision which shall be disposed of forthwith; and it is further

ORDERED that the assignment judge for the County of Burlington shall supervise the disposition by acting municipal court judges of all other matters presently pending in the courts affected by this order.