328 S.E.2d 157

**In re Danny MARKLE.**

**Complaint No. 17–83.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1984.

Rehearing Denied Jan. 10, 1985.

Talbot & Alsop, Jack Alsop, Webster Springs, for appellant.

Charles R. Garten, Charleston, for appellee.

MILLER, Justice:

This is a judicial disciplinary proceeding arising from a charge that Magistrate Danny Markle failed to follow the procedures set out in *State ex rel. Harper v. Zegeer*, 170 W.Va. 743, 296 S.E.2d 873 (1982), in incarcerating a semiconscious inebriate, who subsequently committed suicide in the jail. The Judicial Hearing Board (hereinafter referred to as Board), after hearing testimony from several witnesses, recommended dismissal of this charge. We disagree.

Two issues are presented for our consideration. First, did Magistrate Markle violate the Judicial Code of Ethics by placing a semiconscious, highly intoxicated person in the county jail without contacting his family or friends, or seeking alternative placement in a hospital or mental health facility as required by *Harper?* The Board concluded that he did not because it was not shown that Mr. Palmer was a chronic alcoholic. The second issue centers on whether the work product doctrine bars discovery of investigative reports prepared by the Judicial Investigation Commission (hereinafter Commission) where discovery is sought in a disciplinary proceeding by the judge who is being investigated.

On February 14, 1983, Roger Palmer was arrested for public intoxication by Trooper D.R. Butler of the West Virginia Department of Public Safety. At the time of his arrest, Mr. Palmer was lying semiconscious beside a road in Webster County, soaking wet, with an empty whiskey bottle by his side.

After the arrest, Mr. Palmer was taken to the office of Magistrate Markle, but because of the arrestee's size and condition, Trooper Butler was unable to get him out of the car and into the office. At the request of Trooper Butler, Magistrate Markle went to the State Police cruiser to view the arrestee. Mr. Palmer was too intoxicated to respond to any questions. The magistrate ordered Mr. Palmer held in the Webster County Jail.

The trooper and assistant jailer were unable to carry Mr. Palmer up the stairs to the second floor of the Webster County Jail, so, after a conversation with the sheriff, they placed Mr. Palmer in a locked cell in a "juvenile section" of the jail. When the sheriff of Webster County learned that Mr. Palmer was being incarcerated, he contacted Magistrate Markle to express his belief that Mr. Palmer was an alcoholic.

Roger Palmer had two brothers residing in Webster County, both of whom were known to Magistrate Markle, but he did not attempt to contact either of them or any other member of Mr. Palmer's family or to secure an alternative disposition by way of temporary commitment under the applicable mental health statutes. Magistrate Markle did not talk to Mr. Palmer after he was incarcerated, although he did contact the jail at least twice to inquire about Mr. Palmer's condition.

■ We note initially that we have an independent obligation to review the record and recommendations of the Board, as stated in Syllabus Point 1 of *In Re K. Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984):

  " 'The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial Review Board [now Judicial Hearing Board] in disciplinary proceedings.' Syllabus Point 1, *W.Va. Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980)."

■ In *State ex rel. Harper v. Zegeer*, 170 W.Va. 743, 296 S.E.2d 873 (1982), we discussed at some length our law surrounding the handling and incarceration of chronic alcoholics for the crime of public intoxication and stated in Syllabus Point 1:

"Criminal punishment of chronic alcoholics for public intoxication violates our State constitutional prohibition against cruel and unusual punishment. W.Va. Const. art. III, § 5."

Aside from decriminalizing the crime of public intoxication for chronic alcoholics, we established guidelines for magistrates to follow in dealing with inebriated persons who have been arrested for public intoxication. We stated that when such an individual is brought before a magistrate on a charge of public intoxication:

"[T]he judicial officer may release the charged individual on his own recognizance or other bond upon a determination that the accused possesses the necessary rational capability to conduct his own affairs. W.Va.Code § 62–1C–1 (1977 Replacement Vol.) Alternatively, the judicial officer may release the individual into the custody of a responsible person who agrees to be responsible for the accused's actions. *However, if it is determined that the accused is an 'inebriate', defined by statute as 'anyone over the age of eighteen years who is incapable or unfit to properly conduct himself or herself, or his or her affairs, or is dangerous to himself or herself or others, by reason of ... drunkenness ...,'* W.Va.Code § 27–1–4 (1980 Replacement Vol.), *an alternative disposition must be made under the applicable mental health statutes."* 170 W.Va. at 754, 296 S.E.2d at 884. (Emphasis added).

In speaking of an inebriate, we pointed out that "the judicial officer may order that the defendant be remanded to the custody of the nearest county or regional mental health facility," citing W.Va.Code, 27–5–2. 170 W.Va. at 754, 296 S.E.2d at 884. We also stated that such commitment "may extend for no more than 24 hours without a judicial determination of the need for further detention. W.Va.Code §§ 27–1–4; 27–5–2, 27–1A–11." 170 W.Va. at 755, 296 S.E.2d at 885. Finally, after referring to W.Va.Code, 16–1–10(19), relating to the treatment of alcoholics by the Mental Health Division of the Department of Health, we said that: "The Legislature has clearly demonstrated by enactment of the mental health laws that it does not contemplate that inebriated persons, as defined by law, should be detained in jails or lockups." 170 W.Va. at 755, 296 S.E.2d at 885.[1]

From the foregoing, it is clear that *Harper* mandates that a person arrested for public intoxication who is so inebriated that he is unable to care for himself should not be incarcerated, but should be released to a member of his family or some other responsible adult or taken to a county or regional mental health facility.[2] From the facts of this case, it is clear that Mr. Palmer was so inebriated that he was virtually unconscious. Rather than heeding the strictures of *Harper* and contacting members of Mr. Palmer's family or having him sent to a mental health facility, the magistrate sent him to jail. We believe this was a clear violation of Canon 3(A)(1)

---

**1.** We also note that the *Harper* opinion was circulated to all magistrates shortly after it was issued and was the subject of magistrate training seminars. Magistrate Markle admitted that he was familiar with the opinion.

**2.** In the Final Report to the National Institute of Corrections on the National Study of Jail Suicides 62–63 (1981) prepared by the National Center on Institutions and Alternatives (NCIA), this comment is made:

"As indicated in this study, over 30% of the suicide victims had been incarcerated on alcohol/drug related charges. In addition, almost 60% of all suicide victims were under the influence of alcohol, drugs, or both, at the time of incarceration.

"NCIA found that the overwhelming majority (88.9%) of inmates under the influence of alcohol and/or drugs at the time of incarcera-

tion committed suicide within the first 48 hours of confinement, with half these victims being found dead within the first three hours of confinement.

"As with individuals exhibiting other suicidal tendencies, persons under the influence of alcohol and/or drugs should not be placed in isolation. The time immediately following the arrest of an intoxicated person is critical since withdrawal symptoms are often evidenced. During this period the individual may be in extreme pain, frightened, cold and highly prone to such endangering events as seizures, liver failure, and delirium tremens (DT's). Such an individual does not belong in jail, and should be treated in a detoxification center, or if unavailable, a hospital emergency room."

which requires, in part, that: "A judge should be faithful to the law and maintain professional competence in it."

■ We discussed this provision in *In Re K. Pauley*, where a magistrate had failed to follow certain mandatory criminal procedures in the commitment of a defendant to jail. Relying in part on a number of cases from other jurisdictions,[3] we held in Syllabus Point 2:

"The deliberate failure to follow mandatory criminal procedures constitutes a violation of the Judicial Code of Ethics."

■ Here, as in *In Re K. Pauley*, the magistrate was aware of the mandates of our law and decided not to follow them. We, therefore, reverse the decision of the Board and conclude that a violation of the Judicial Code of Ethics has been shown by clear and convincing evidence.[4] In *In Re K. Pauley*, we suspended the magistrate for six months without pay. Here, we do not believe the facts are as egregious as in that case and we, therefore, conclude that a suspension for three months without pay is appropriate.

■ With regard to the second issue of whether the Commission's investigative report had to be turned over to Magistrate Markle, we resolve this issue under Rule 26(b)(3) of our Rules of Civil Procedure. We recognized in Syllabus Point 1 of *State ex rel. McGraw v. West Virginia Judicial Review Board*, 165 W.Va. 704, 271 S.E.2d

344 (1980), that because of language contained in our Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the Rules of Civil Procedure applied to hearings before the Board:[5]

" 'Proceedings of the West Virginia Judicial Review Board are governed by the West Virginia Rules of Civil Procedure; consequently, the Board must permit appropriate discovery of Judicial Inquiry Commission members upon proper motion made by a party subject to investigation by the Judicial Review Board.' Syl. Pt. 2, *State ex rel. McGraw v. West Virginia Judicial Review Board*, 164 W.Va. 363, 264 S.E.2d 168 (1980)."

In this same case, we announced this principle in Syllabus Point 2:

"It is the obligation of the Judicial Review Board to supervise the extent of discovery in the same manner that a trial court supervises discovery under the *West Virginia Rules of Civil Procedure;* this Court will not assume original jurisdiction of discovery matters."

The Commission's investigative report contained a summary of testimony given by various witnesses relative to the Palmer incident. The Board granted Magistrate Markle's motion to compel production of this report. Counsel for the Commission contends that this material constituted work product under Rule 26(b)(3) of our Rules of Civil Procedure.[6]

---

3. *E.g., Matter of Ross*, 428 A.2d 858 (Me.1981); *Matter of Holder*, 74 N.J. 581, 379 A.2d 220 (1977); *Matter of Hardt*, 72 N.J. 160, 369 A.2d 5 (1977); *Matter of MacDowell*, 57 A.D.2d 169, 393 N.Y.S.2d 748 (1977); *Matter of Cieminski*, 270 N.W.2d 321 (N.D.1978); *Matter of Guay*, 101 Wis.2d 171, 303 N.W.2d 669 (1981).

4. This is the standard of proof required in judicial disciplinary hearings. *E.g.,* Syllabus Point 4, *In Re H. Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

5. This provision is currently found in Rule III(C)(2) of the Rules of Procedure for Handling Complaints Against Justices, Judges and Magistrates and, in relevant part, states: "Except where otherwise provided for by these rules, the provisions of the West Virginia Rules of Civil Procedure and the rules of evidence used in civil cases in West Virginia shall govern proceedings before the Board." Identical language can be found in the older rules relating to

hearing complaints against judges in existence at the time of the *McGraw* decision. *See* Rule II(B)(11).

6. The relevant portion of Rule 26(b)(3) of the Rules of Civil Procedure states:

"Trial Preparation: Materials.—Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering dis-

■ Our Rule 26(b)(3) is identical to the federal rule, which was adopted in 1970 as a part of a larger reorganization of the discovery section of the Federal Rules of Civil Procedure. 4 J. Moore, J. Lucas and G. Grotheer, Moore's Federal Practice ¶ 26–63[9] at 26–346 (2d ed. 1984).[7] The purpose of Rule 26(b)(3) is to narrow the ability to obtain trial preparation material by expanding the coverage of the work product rule to include persons other than an attorney. This is explained in 8 C. Wright and A. Miller, Federal Practice and Procedure § 2024 at 202–07 (1970):

> "Prior to 1970 the principal controversy about what type of material was within the work product protection was whether the protection extended only to materials prepared or obtained by a lawyer or whether it also reached trial preparation materials prepared by others.... Under the 1970 amendment it is clear that all documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product, so long as they were prepared in anticipation of litigation or preparation for trial.
>
> "Prior to the 1970 amendment some cases held that statements obtained by claim agents and investigators had the same protection given to attorneys. Other cases thought that the work product rule was based on the unique place of the attorney in the adversary system and refused to extend the protection to these nonlawyers.... Accordingly the 1970 amendment expressly extends protection to documents prepared by or for a representative of a party, including his agent.
>
> "... Rule 26(b)(3) protects documents prepared for litigation by or for a party's representative, including his indemnitor or insurer. Thus it will now be clear that

a report from the insured to the insurer is within the immunity as also will be statements obtained by investigators for the insurer.

> "The 1970 amendment extends the work product protection to documents and things prepared for litigation or trial by or for the adverse party himself or his agent. Prior to the amendment some cases have held that documents of this kind were not within the immunity." (Footnotes omitted).

The federal courts have followed this view and applied the work product doctrine to materials produced by nonlawyers. *See e.g., United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (criminal investigators hired by defense attorney); *Sprague v. Director, Office of Workers' Comp.,* 688 F.2d 862 (1st Cir.1982) (physician); *In Re Int'l Systems & Controls Corp. Securities Litigation,* 693 F.2d 1235 (5th Cir.1982) (accountants); *Exxon Corp. v. FTC,* 663 F.2d 120 (D.C.Cir.1980) (economists); *Appeal of Hughes,* 633 F.2d 282 (3d Cir.1980) (private investigator); *In Re Grand Jury Proceedings,* 601 F.2d 162 (5th Cir.1979) (accountant); *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215 (4th Cir.1975) (French patent agent); *Spaulding v. Denton,* 68 F.R.D. 342 (D.Del.1975) (marine surveyors); *Home Insur. Co. v. Ballenger Corp.,* 74 F.R.D. 93 (N.D.Ga.1977) (claim agent).

■ Rule 26(b)(3) also makes a distinction between factual and opinion work product with regard to the level of necessity that has to be shown to obtain their discovery. Where factual work product is involved, the party demanding production must show "a substantial need" for the material and that he cannot obtain the same or its equivalent through other means "without undue hardship."[8] Where opinion work product is involved, the showing

---

covery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

7. We did not adopt these changes in our civil rules until June 1, 1978.

8. The relevant portion of Rule 26(b)(3) is that "the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

required to obtain discovery is even stronger since the rule states that "the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories." Rule 26(b)(3).[9]

It should also be noted that Rule 26(b)(3) contains an exception allowing a party to obtain his own statement without meeting the substantial need and undue hardship standard.[10]

Furthermore, since the limitation in Rule 26(b)(3) is against obtaining documents and other tangible things used in trial preparation, there is no prohibition against using other discovery methods to identify witnesses and depose them. *In Re Int'l Systems & Controls Corp., Inc.,* 693 F.2d at 1240; *Gay v. P.K. Lindsay Co., Inc.,* 666 F.2d 710, 713 (1st Cir.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982); 8 C. Wright and A. Miller, *supra,* § 2025 at 215.

Where factual work product is involved, the question of what constitutes "substantial need" and "undue hardship" has been frequently litigated in the federal courts. It is now well established that this standard is met where a witness is no longer available for questioning or is hostile and refuses to give a statement or has a faulty memory and can no longer remember the details of the event in question. 8 C. Wright and A. Miller, *supra,* § 2025 at 216–20; 4 J. Moore, J. Lucas and G. Grotheer, *supra,* at 26–369. Discovery has also been allowed where crucial information was in the exclusive control of the opposing party. 4 J. Moore, J. Lucas and G. Grot-

heer, *supra,* ¶ 26–64[3.–1] at 26–365 through –368.

Although the cost of obtaining depositions may be relevant, it is seldom, if ever, sufficient in itself to constitute "undue hardship." *In Re Int'l Systems & Controls Corp.,* 693 F.2d at 1241; *Carver v. Allstate Insur. Co.,* 94 F.R.D. 131, 136 (S.D.Ga.1982); *Connelly v. Dun & Bradstreet, Inc.,* 96 F.R.D. 339, 343 (D.Mass. 1982).

The investigative report in the present case does, we believe, fall within the ambit of Rule 26(b)(3) since the investigator is an agent of the Commission and works under the direction of its attorney in investigating and preparing reports that ultimately lead to a trial before the Board. His report consisted of summaries of interviews with nine persons, including Magistrate Markle. As we have earlier noted, Rule 26(b)(3) would enable the magistrate to obtain a copy of his own summary statement. As to the other witnesses, we do not believe that Magistrate Markle was entitled to their summaries. We treat this report as factual work product as it does not appear to contain mental impressions, conclusions, opinions, or legal theories of the investigator. Thus, the standard to be met is substantial need and undue hardship, as previously noted.

The only argument advanced by the magistrate's attorney was that it would be burdensome to contact the eight witnesses, all of whom lived in Webster County. We do

---

9. Courts have either concluded that mental impressions are absolutely immune to discovery, *see Duplan Corp. v. Moulinage Et Retarderie de Chavanoz,* 509 F.2d 730, 732–35 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *In Re Grand Jury Proceedings,* 473 F.2d 840, 848 (8th Cir.1973), or that they can be obtained only in rare and extraordinary circumstances. *See In Re Murphy,* 560 F.2d 326, 336 (8th Cir.1977).

10. This portion of Rule 26(b)(3) provides:
   "A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party

may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded."

not believe this was sufficient to meet the undue hardship requirement.[11]

For the foregoing reasons, we believe that the Board erred in requiring the Commission's counsel to turn over the entire report of its investigator. However, this error did not harm Magistrate Markle. We, therefore, conclude for the reasons hereinbefore stated that his deliberate failure to comply with the guidelines in *Harper* warrants his suspension without pay for three months.

Complaint Sustained.

---

**11.** We note that the Board quite properly ordered the Commission to turn over a copy of the State Police Investigation Report of the incident. This report contained summaries of statements by several of the same witnesses.