597 A.2d 1388

IN THE MATTER OF JUDGE DOMINICK C. SANTINI, JUDGE OF
THE MUNICIPAL COURTS OF KNOWLTON TOWNSHIP AND
ALPHA BOROUGH, WARREN COUNTY.

Argued September 10, 1991—Decided November 1, 1991.

*Patrick J. Monahan, Jr.,* Counsel, argued the cause for Advisory Committee on Judicial Conduct.

*Abbott S. Brown* argued the cause for respondent (*Brown, Gold & Beck,* attorneys).

PER CURIAM.

This proceeding against respondent, Dominick C. Santini, a municipal court judge, arises out of a complaint filed with the Advisory Committee on Judicial Conduct (ACJC). The ACJC found that respondent had intervened on behalf of a private

client in a matter pending before another municipal court. Based on our independent review of the record, we concur in the ACJC's determinations that respondent violated the standards of judicial conduct. Respondent's prior record, both as a municipal court judge and as an attorney, is unblemished. He recognizes his error and requests that the reprimand be private. Because of the nature of the violation and its effect on the public interest, however, we conclude that the reprimand must be public.

–I–

As found by the ACJC, the relevant facts are:

Since 1987 [respondent] has been the Municipal Court Judge of both Knowlton Township and Alpha Borough, Warren County. In the early 1980's, Respondent began to represent Jerry Whitehead, who had a variety of business interests in White Township, Warren County.

On April 21 or 22, 1990, Whitehead informed Respondent that he had received a summons alleging zoning violations and was scheduled to appear in the White Township Municipal Court on April 25, 1990. Respondent said that as a judge he could not appear on Whitehead's behalf and Whitehead asked him to find another attorney to represent him.

During the late morning or early afternoon of April 24, Respondent called Laurel Napolitani, White Township Municipal Court Clerk, at the White Township Municipal Court and asked if she was familiar with the Whitehead matter. She said she was, and Respondent asked her to explain what it was about. She told him the parts of the ordinance that had allegedly been violated. Respondent then said that he could not become personally involved in the case because of his judicial position but would get Whitehead an attorney. Napolitani asked who it would be, and Respondent said Brian Smith. Napolitani reminded Respondent that it would be necessary for Whitehead to appear unless she received a telephone call or a letter from an attorney representing Whitehead before the court session of April 25. Napolitani emphasized that if the court did not hear from an attorney, Whitehead would have to appear. In that event the charge would be read, Whitehead would be read his rights, and the matter would be rescheduled.

Respondent testified that he had tried to contact John Cornish to have Cornish represent Whitehead but that he and Cornish kept missing each other. Respondent also testified that he told Napolitani of his inability to reach Cornish and advised her he would ask Brian Smith to handle the case if necessary. It is apparent that Respondent misunderstood Napolitani.

After his conversation with Napolitani, Respondent telephoned Robert Wilson, White Township Zoning Officer, who had filed the complaint against Whitehead. Respondent told Wilson that he represented Jerry Whitehead, inquired as to the nature of the charges against him, and asked if Wilson could speak to Whitehead to resolve the matter outside court. Wilson explained the nature of the charges and told Respondent that he had previously spoken to Whitehead and that he had to resort to filing charges because Whitehead would not comply with zoning regulations. Respondent then asked Wilson for an adjournment, but Wilson replied that he did not have the power to grant one. During this conversation, Wilson knew that Respondent was a municipal court judge.

Neither Whitehead nor an attorney appeared on April 25, 1990. Whitehead was arrested that evening on a bench warrant ordered by Judge Houston and was immediately released when he posted bail. When Respondent came home that night, his son informed him of a telephone message to the effect that Jerry Whitehead had been arrested. Respondent called Laurel Napolitani at her home at about 9:30 p.m. and remonstrated with her for taking this action after he had informed her of his personal interest in the matter. Napolitani pointed out that it was Judge Houston who had ordered the arrest, not her. She reminded Respondent that he was out of order because "being a judge he shouldn't have been calling me." About ten minutes later, Respondent called Napolitani again to obtain Judge Houston's home telephone number. He then called Judge Houston at home and asked why Houston had issued the bench warrant. Houston replied that he did not know.

Houston subsequently reviewed the entire affair with Napolitani. When the case came before him in June, Judge Houston recused himself. As he testified before the Committee, it was clear to him that under our rules a judge should not contact another judge about a pending matter. [Footnote omitted.]

## Based on its findings, the ACJC concluded that

[respondent] was authorized to retain another attorney to represent Whitehead, and he did call John Cornish's office to see if he would handle the case. Instead of leaving a message concerning the reason for his call, he chose to say nothing to Cornish's secretary about his purpose in calling even though he knew that he would be out of the office most of the time up to the court session at which Whitehead was to appear. Indeed, on April 23 Respondent had to appear in both Somerset and Warren Counties, on April 24 he was in compensation court in Phillipsburg, and on April 25 he was in Morristown and then had to preside over court in Knowlton Township. In short, any time pressure that Respondent was under was largely of his own making.

The most serious of Respondent's violations was the telephone call that he made to Judge Houston on the night of April 25. He was aware at the time that Judge Houston knew him to be a municipal court judge. At the time that he made the call, Respondent did not know that Judge Houston would later recuse himself from the Whitehead case. Indeed, he had every reason to

believe that Judge Houston would be presiding not only over the zoning charges against Whitehead but also over the charge of contempt of court for failure to appear on April 25. By calling Judge Houston, Respondent improperly intervened in a matter pending before another municipal court judge.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Respondent's first telephone call to Laurel Napolitani after the court session on April 25 was improper not only because it constituted an intervention with another court on behalf of a defendant before that court but also because it was an attempt to intimidate Napolitani. The call served a dual purpose: it reminded Napolitani of Respondent's continuing interest in Whitehead and it informed Napolitani that she had displeased another municipal court judge. In effect, it informed Napolitani that she had apparently not gotten the message that one does not issue a bench warrant for the arrest of someone in whom a municipal court judge has expressed an interest. The second call to Napolitani, although for the practical purpose of obtaining Judge Houston's home telephone number, also had the effect of intimidating Napolitani because it made her aware that Respondent was not going to let the matter rest but was about to call his judicial colleague, who was her boss. Although Respondent did not tell Napolitani why he wanted the telephone number, the obvious inference to be drawn was that Respondent would be calling Judge Houston about the Whitehead case.

Finding that respondent's actions violated *Rule* 1:15–1(b) and Canons 1, 2, and 3 of the Code of Judicial Conduct, the ACJC recommended that respondent be publicly reprimanded. We agree.

–II–

*Rule* 1:15–1(b) limits the practice of attorneys serving as municipal court judges by requiring that "[a]n attorney who is a judge or acting judge of a municipal court \* \* \* not practice in any criminal, quasi-criminal or penal matter, whether judicial or administrative in nature \* \* \*." We summarized the meaning of the relevant canons in *In re Murray,* 92 *N.J.* 567, 570, 458 *A.*2d 116 (1983):

Canons 1, 2, and 3 of the Code of Judicial Conduct set forth the law governing the issues. Canon 1 compels a judge to observe and maintain high standards of conduct so that the integrity and independence of the judiciary may be preserved. Canon 2(B) requires a judge to avoid any impropriety or even the appearance of such impropriety: "A judge ... should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special

position to influence him," nor should a judge "testify as a character witness." Canon 3 establishes guidelines concerning the impartial performance of judicial duties and includes in Canon 3A(4) the admonition that a judge may "neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding."

Respondent's intervention with three public officials on behalf of his client contravenes both the Code and the Rule. At the outset, respondent was sensitive to the limitation that his judicial office imposed on his ability to represent his client. He told Whitehead that he could not represent him. If respondent had stood firm, he would not be before us. Unfortunately, he became ensnared in the process of trying to obtain another attorney. That process went awry because of the inability of the two attorneys, due to other commitments, to communicate directly with each other.

■ From time to time, the clients of attorneys who serve as municipal court judges will be defendants in proceedings before other municipal courts. When that situation occurs, the judge understandably may try to find another attorney to represent the client. Municipal judges must remember, however, that their desire to serve their clients must yield to the restrictions of their judicial office. The judge who cannot obtain other counsel should so advise the client. The client must then obtain other counsel, seek an adjournment, or take other appropriate action. Under no condition may the municipal court judge communicate with the judge or clerk of the court in which the proceeding is pending.

■ Once respondent failed to reach the other attorney, he continued to represent Whitehead by making additional telephone calls. Respondent now recognizes the impropriety of those calls. His misconduct led a zoning officer, a municipal court clerk, and another municipal court judge to believe that respondent was somehow involved or interested in the Whitehead case. Consequently, respondent's misconduct conveyed the impression that respondent was in a special position of

influence and lent the prestige of his position to advance the private interests of his client.

Respondent disputes the finding that his call to the court clerk immediately after the April 25th court session "was an attempt to intimidate [her]." He asserts that acting on mistaken information that Whitehead was in jail, he "panicked" over his client's well-being. Information that a client has been incarcerated could understandably generate feelings of panic in an attorney. Judges, however, should be made of sterner stuff. As Justice Douglas observed, "[j]udges are supposed to be men of fortitude, able to thrive in a hardy climate." *Craig v. Harney*, 331 *U.S.* 367, 376, 67 *S.Ct.* 1249, 1255, 91 *L.Ed.*2d 1546, 1552 (1947). We need not go so far as to find that respondent's conduct was an attempt to intimidate the court clerk. Respondent was, as the court clerk recognized, "out of order because being a judge he shouldn't have been calling me."

In recognizing that a municipal court judge when representing a client should not call the clerk or judge of another municipal court, we also recognize that an attorney can react strongly on learning that a client has been arrested. An arrest is a serious matter. Incarceration is even more dangerous. If Whitehead had been incarcerated, his incarceration might be an extenuating factor in assessing respondent's conduct. Perhaps this entire situation could have been avoided if the White Township Municipal Court had exercised more circumspection before ordering the arrest of a citizen for a non-appearance on a zoning violation that did not threaten the public health or safety. *Rule* 7:6–3, which governs non-appearances by residents of this State in motor vehicle violations, authorizes either the issuance of a warrant or the mailing of a written notice to the defendant. We are asking our Committee on Criminal Practice to consider the feasibility of amending *Rule* 3:3–1, which deals with non-indictable offenses cognizable in the municipal court, to include a similar provision for a written notice instead of the issuance of an arrest warrant.

Respondent's original concerns while under the mistaken impression that his client had been jailed do not justify his subsequent conduct. He learned soon after the first of his two telephone conversations with the court clerk on the evening of April 25 that Whitehead had been released. Nonetheless, respondent persisted in calling the clerk and the judge of the other municipal court. As this case demonstrates, the danger in making one telephone call on behalf of a client is that one call often leads to another. The best way to avoid the risk that such calls will be construed as an attempt at intimidation is by not making the first telephone call.

In many respects this case is reminiscent of *In re Murray, supra,* 92 *N.J.* at 571, 458 *A.*2d 116, in which we stated:

A municipal court judge must at all times be sensitive to the public's perception of his actions. As this Court has often noted, the municipal court is an integral part of our judicial system. *In re Hardt,* 72 *N.J.* 160 [369 *A.*2d 5] (1977); *In re Mattera,* 34 *N.J.* 259 [168 *A.*2d 38] (1961). A municipal court is the court of first resort and

[f]or all practical purposes, the judgments of the municipal court are final. It is there that most citizens have their sole exposure to the judicial process. The respect they have for the judiciary hinges upon that experience. Thus, the magistrate has a unique responsibility for the popular image of the entire system. [*Mattera,* 34 *N.J.* at 275, 168 *A.*2d 38.]

Improper conduct by a municipal court judge, which is

visible and apparent to the community, destroys the trust and confidence in our institutions upon which our entire government structure is predicated. We cannot and will not tolerate members of the profession subverting judicial integrity at any level, for the damage is irreparable. [*In re Spitalnick,* 63 *N.J.* 429, 432, 308 *A.*2d 1 (1975).]

Part-time municipal court judges such as respondent, who maintain private practices, must be particularly circumspect. They must at all times keep separate their dual functions as judge and attorney. Zeal for a client is a proper motivation for a part-time municipal court judge in his capacity as an attorney. But such zeal can never be used by a judge as justification for using his judicial office to promote his client's interests.

Respondent knew or should have known of the effect of his telephone calls on the three public officials. He knew or should have known that his actions violated *Rule* 1:15–1(b) and that they would erode the public's confidence in the integrity and impartiality of the judiciary.

After a careful review of the entire record, we conclude that respondent's actions warrant a public reprimand.

So ordered.

*For reprimandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

### ORDER

The Advisory Committee on Judicial Conduct having filed a presentment with the Court, recommending that JUDGE DOMINICK C. SANTINI be publicly reprimanded for violations of *Rule* 1:15–1(b), *Rule* 2:15–8(a)(6), and Canons 1, 2, and 3 of the *Code of Judicial Conduct,* and good cause appearing;

It is ORDERED that DOMINICK C. SANTINI is hereby publicly reprimanded for violations of *Rule* 1:15–1(b) and Canons 1, 2, and 3 of the *Code of Judicial Conduct;* and it is further

ORDERED that respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.