484 S.E.2d 199

**STATE of West Virginia ex rel. UNITED HOSPITAL CENTER, INC., a Corporation, Petitioner,**

v.

**Honorable Thomas A. BEDELL, Judge of the Circuit Court of Harrison County, and Mary Mobley, Administratrix of the Estate of Agnes Becker, Respondents.**

No. 23847.

Supreme Court of Appeals of West Virginia.

Submitted March 7, 1997.

Decided March 14, 1997.

---

Herbert G. Underwood, Janis P. White, Steptoe & Johnson, Clarksburg, for Petitioner.

Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, Marc S. Zweben, Marc S. Zweben, P.C., Washington, D.C, for Respondent, Mary Mobley.

McHUGH, Justice:

Petitioner, United Hospital Center, Inc. (hereinafter "hospital") invokes this Court's original jurisdiction pursuant to *W.Va. Const.* art. VIII, § 3 and *W.Va.Code*, 51–1–3 [1923], and seeks a writ of prohibition against the

Honorable Thomas A. Bedell, Judge, to prevent the enforcement of two orders. The first order, entered October 31, 1996, ordered the hospital to release to plaintiff Mary Mobley, Administratrix of the Estate of Agnes Becker, an incident report prepared by a nurse after Mrs. Becker fell in the hospital's emergency room. The second order, entered November 1, 1996, ordered the hospital to disclose to plaintiff the investigation report prepared by the hospital's former general counsel and risk manager and further ordered the hospital's current general counsel to testify as to the substance of conversations he had with various hospital personnel.

For the reasons discussed below, the hospital's petition for writ of prohibition is granted as moulded.

## I.

On or about November 3, 1994, Agnes Becker, age 93, was taken to the hospital's emergency room after having fallen at home. Mrs. Becker was examined and subsequently ordered discharged when it was determined that she had suffered no serious injuries.

In preparation for discharge, Mrs. Becker was raised to a sitting position at one side of the elevated cart on which she had been reclining. When Debra Lemasters, the nurse attending to Mrs. Becker, turned away from Mrs. Becker and leaned forward to bring a wheelchair closer to the cart, Mrs. Becker fell forward, landing on her right side. Mrs. Becker sustained injuries to her right hip and elbow and remained hospitalized for approximately two months. Mrs. Becker, who had previously lived independently, was ultimately discharged to a continuous care facility where she remained until her death approximately one year later.[1]

### A.

#### The Incident Report

Within minutes after Mrs. Becker's fall, Nurse Lemasters prepared the incident report which is presently at issue.[2] According to written hospital policy regarding incident reports, "[a]ll accident/incidents that occur on United Hospital Center property shall be documented, so that a proper review may be conducted." Hospital policy defines "incident" as "[a]ny event that occurs during the hospital stay of a patient, visitor or volunteer which is non-routine (i.e. an accident or mistake) or has some potential for physical or mental injury to that patient, his/her family or visitor."[3] Hospital policy further indicates that an incident report is *"not a medical document* and does not go in the medical record. A completed Incident Report is to be treated confidentially." (emphasis provided).

In addition, written hospital guidelines regarding incident reports provide, in relevant part:

Incident reports are an integral part of managing today's health care system. They assist in determining levels of care that are being provided and they are a resource for claims management.

Hospitals are expanding their role as a community service. In order to maintain a viable community service it is essential that the risk manager learn of serious patient problems at the earliest possible time. Early notification will result in better response, which will improve quality and/or service.

The purpose of incident reporting is not to place blame on individuals. It is designed to enhance the care provided and to assist in providing a safe environment. The responsibility for completing an incident report lies with virtually all people associated with this hospital.

It is important that it be understood that REPORTING an incident does NOT make

---

1. Agnes Becker, by her attorney-in-fact and next friend, Mary Mobley, originally instituted the underlying action against the hospital, pursuant to the West Virginia Professional Liability Act, *W.Va.Code,* 55–7B–1, *et seq.* Upon Mrs. Becker's death, Mary Mobley was named as plaintiff, as executrix of the estate of her mother.

2. The incident report was placed under seal and submitted to this Court as part of the hospital's "exhibit 8."

3. According to hospital policy, "[a] visitor-patient incident report shall be completed if there is: ... (d) A fall."

it a CLAIM. However, a POTENTIAL CLAIM will NOT DISAPPEAR merely because it was not REPORTED.

Be assured that few unusual incidents result in any claimant activity—even fewer result in claims payment. Many injuries occur without fault on the part of any member of the health care team; and instances of potential liability do not always result in injury.

The guidelines require that a completed incident report be forwarded to the department head or supervisor, who then reviews the report and immediately remits it to the risk manager. Furthermore, "[f]or those incidents which are considered by the risk manager as potential claims or serious in nature, special investigations will follow."

In a deposition, Nurse Lemasters testified that she completes an incident report "[a]ny time that there's any kind of an incident, not necessarily an injury, but anything that's out of the ordinary occurs[.]" She further testified that "[a]n incident report is something that I would do if there was an incident, so I can't say if somebody told me to do it because that was just something I would do." Nurse Lemasters stated that she obtained an incident report form from the nurses' station, where such forms are kept "[a]s a matter of course."

According to the hospital, its general counsel and risk manager at that time, Robert Bray, arrived in the emergency room shortly after Mrs. Becker's fall, at which time he spoke with members of Mrs. Becker's family. Also at that time, Nurse Lemasters, upon completing the incident report, gave the report directly to Mr. Bray, at his request.

The hospital refers specifically to the allegations in plaintiff's complaint that Mr. Bray did not tell plaintiff that he was a lawyer and the hospital's general counsel when he spoke with family members. However, the hospital points out that plaintiff conceded, during a deposition, that Mr. Bray had given her his business card on which he was identified as general counsel. The hospital refers also to that portion of plaintiff's complaint in which it is asserted that a family member told Mr. Bray that "the nurse could have prevented the fall by not turning her back and walking away from Mrs. Becker while Mrs. Becker was sitting on the edge of the cart." Plaintiff's complaint further asserts that Mr. Bray told family members that the hospital would pay for any surgery Mrs. Becker might require as the result of her fall.

### B.

#### The Investigation Report

Following Mrs. Becker's fall, Mr. Bray completed a "General Counsel/Risk Manager's Investigation Form." This form (hereinafter "investigation report") is labeled "Confidential"[4] and includes the following typewritten paragraph which appears to be preprinted on the form:

PLEASE HANDLE IN A CONFIDENTIAL MANNER, this memorandum contains work product prepared by an attorney, or a representative of an attorney at the direction of an attorney, in anticipation of litigation and reflects the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party that will be relied upon by hospital legal counsel in preparing for the possibility of litigation. Pursuant to Rule 26(b)(3) of the West Virginia Rules of Civil Procedure, the following trial preparation material is privileged and not discoverable even with a showing of substantial need and an inability to obtain the substantial equivalent of these materials by other means.

The four-page investigation report[5] consists of Mr. Bray's notes as well as a statement written by Nurse Lemasters. The hospital notes that the report alludes to, among other things, the aforementioned conversation Mr. Bray had with members of Mrs. Becker's family.

---

4. Like the incident report, the investigation report was submitted to this Court under seal as part of the hospital's "exhibit 8."

5. Though the investigation report is dated November 4, 1994, the day after the incident, it appears that the report was actually written beginning November 3, 1994.

## C.

Plaintiff made several discovery requests of the hospital, specifically seeking the incident report and other notes made by or for Mr. Bray. The hospital refused to comply with plaintiff's discovery requests on the ground that the requested material was protected from discovery under the work product doctrine. *See W.Va.R.Civ.P.* 26(b)(3).

On October 7, 1996, Daniel Vannoy, the hospital's current general counsel, was deposed as the hospital's designee pursuant to plaintiff's notice of deposition under *W.Va. R.Civ.P.* 30(b)(6). *W.Va.R.Civ.P.* 30(b)(6) provides:

> A party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. A subpoena shall advise a nonparty organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

At the October 7, 1996 deposition,[6] Mr. Vannoy, who became employed as general counsel approximately seven months after the incident in question, was directed not to answer questions regarding the specific contents of the incident report and investigation report prepared by his predecessor, Mr. Bray, on the grounds that these documents were protected by the attorney-client privilege[7] and the work product doctrine. Mr. Vannoy likewise refused to answer questions regarding the substance of conversations he had with Nurse Lemasters on the ground that such conversations were protected from disclosure under both the attorney-client privilege and the work product doctrine.

On October 9, 1996, plaintiff filed a motion to compel discovery, seeking, *inter alia*, the production of all documents reviewed by Mr. Vannoy concerning the subject matters of his testimony as the hospital's corporate designee under *W.Va.R.Civ.P.* 30(b)(6). By designating Mr. Vannoy to testify at the October 7, 1996 deposition concerning the hospital's position concerning Mrs. Becker's fall, the hospital, according to plaintiff's motion to compel discovery, "waived any privilege attaching to documents relating to the fall, including," *inter alia*, the incident report, the investigation report and "[t]estimony from Mr. Vannoy concerning interviews and conversations about Mrs. Becker's fall with Hospital agents, attorneys, employees, physicians, directors or officers."

On October 21, 1996, a hearing was conducted on plaintiff's motion to compel discovery, at which hearing Mr. Vannoy appeared as the only witness. Further proceedings on the matter were conducted on October 28, 1996. The respondent judge subsequently entered an order on October 31, 1996, ordering the hospital to disclose to plaintiff the incident report prepared by Nurse Lemasters after Mrs. Becker's fall. The October 31, 1996 order further stated that the "incident report was not protected by either the attorney-client privilege or by the protection afforded to work product[;]" "that labeling the document 'attorney's confidential incident report' did not bring it within the scope of either privilege [;]" and "that the [hospital's] policy manual provided that incident reports of this nature were to be directed to the [hospital's] risk manager rather than to its General Counsel."

Final proceedings on the motion to compel discovery were held on November 1, 1996, on which date, the respondent judge entered a second order, stating, *inter alia*, the following:

> The Court found that the investigation report by Mr. Bray was factual in nature, and analogous to an insurance investiga-

---

6. The deposition of Mr. Vannoy began on October 7, 1996 and continued over several days.

7. *See W.Va.R.Civ.P.* 26(b)(1).

tor's report in similar circumstances. The Court noted that the fact that the incident investigation was performed by counsel did not automatically confer work product status upon it. Based on an analogy to authority under the Federal Rules of Civil Procedure, the Court found that the material did not consist of attorney work product and was not protected by attorney client privilege. Based on the foregoing, the Court ORDERED that the investigation report of Mr. Bray be produced.[8]

The Court next addressed the plaintiff's motion to require Mr. Vannoy to testify as to the contents of conversations he had with hospital agents, attorneys, employees, physicians, directors or officers. The Court stated that the hospital could not protect itself from discovery by having its attorney perform the investigation. The Court then found that by producing Mr. Vannoy as a witness, in response to a Notice of Deposition under Rule 30(b)(6) of the West Virginia Rules of Civil Procedure, [the hospital] had waived both attorney client and attorney work product privileges and the Court ORDERED that Mr. Vannoy be required to testify as to the contents of these conversations.

(footnote added).

It is enforcement of both the October 31, 1996 and November 1, 1996 discovery orders that the hospital seeks to prohibit.

## II.

### Writ of Prohibition

■ The hospital's right to the extraordinary remedy of prohibition must clearly appear before it is entitled to such remedy. *See Norfolk Southern Ry. Co. v. Maynard,* 190 W.Va. 113, 120, 437 S.E.2d 277, 284 (1993); *State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 41, 277 S.E.2d 718, 722 (1981). Indeed, it is well established that

> '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having

such jurisdiction exceeds its legitimate powers. *W.Va.Code,* 53–1–1.' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977).

Syl. pt. 2, *State ex rel. Kees v. Sanders,* 192 W.Va. 602, 453 S.E.2d 436 (1994).

■ Because orders granting discovery requests are interlocutory, they are, as a general rule, not appealable until after a final judgment has been rendered. *State ex rel. USF & G v. Canady,* 194 W.Va. 431, 437, 460 S.E.2d 677, 683 (1995). In syllabus point 3 of *Canady,* however, we established a specific exception to this general rule: "When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate."

This Court reasoned that "[i]f the privilege . . . to keep confidential materials from being delivered to the opponent pursuant to court order is not vindicated before the violation occurs, then this sacred privilege . . . is no privilege . . . at all but a cruel illusion." *Id.,* 194 W.Va. at 437, 460 S.E.2d at 683 (footnote omitted). *See Id.* at n. 8 ("[T]he damage will occur upon disclosure, and a later appeal would be uneventful.")

The respondent judge, in this case, ordered disclosure of reports and conversations claimed by the hospital to be confidential and protected by both the attorney-client privilege and the work product doctrine. *See W.Va.R.Civ.P.* 26(b)(1) and (3); syl. pt. 3, *Canady, supra.* In that the discovery orders at issue involve the probable invasion of confidential materials that are, at least in the hospital's view, exempted from discovery under Rule 26(b)(1) and (3), the exercise of this Court's original jurisdiction is appropriate. Syl. pt. 3, *Canady, supra.*

## III.

### Burden of Proof and Standard of Review

■ As this Court observed in *Canady,* 194 W.Va. at 437–38, 460 S.E.2d at 683–84,

---

8. The respondent judge also found various notes attached to the investigation report to be "attorney work product including mental impres-sions[.]" These materials were ordered *not* to be produced.

both the attorney-client privilege and the work product doctrine are to be strictly construed. *See Id.* 194 W.Va. at 438, 460 S.E.2d at 684 (It is a "fundamental principle that ' "the public . . . has a right to every man's evidence." ' 'Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.' " (citations omitted)). Furthermore, "[t]he burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syl. pt. 4, *Canady, supra.* Thus, the burden rests upon the hospital to demonstrate that the incident and investigation reports at issue are protected from discovery under the attorney-client privilege and the work product doctrine.

▆▆▆ The above burden and strict construction notwithstanding, this Court is aware that the attorney-client privilege "is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." *Canady,* 194 W.Va. at 438, 460 S.E.2d at 684. Such privilege further "encourages a client to talk freely with his attorney so he may receive quality advice." *Id.* (citation omitted). Likewise, with regard to the work product doctrine, " '[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.' " *Id.* (quoting *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947)).

▆▆▆ Courts are therefore required to protect "the integrity and fairness of the fact-finding process by requiring full disclosure of all relevant facts connected with the impending litigation" while, at the same time, promoting "full and frank consultation between a client and a legal advisor by re-

moving the fear of compelled disclosure of information." *Id.* To this end, we held the following in syllabus points five and six of *Canady, supra:*

5. When a circuit court's discovery ruling with respect to privileged materials will result in the compelled disclosure of those materials, a hard and more stringent examination will be given on appeal to determine if the circuit court abused its discretion.

6. Unless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous.

IV.

*The Attorney–Client Privilege*

▆▆▆ The hospital originally argued in its petition that both the incident report and the investigation report are protected from discovery under the attorney-client privilege.[9] However, it became clear during oral argument before this Court that the hospital no longer believes that these materials are protected by this privilege. In that we agree with the hospital's assessment of the materials, our discussion on this issue will be brief.

*W.Va.R.Civ.P.* 26(b)(1) provides, in relevant part:

(b) *Discovery scope and limits.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In general.—Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the

---

9. Though the hospital also originally argued in its petition that both the incident report and the investigation report are protected from discovery under *W.Va.Code,* 30–3C–3 [1980], "confidentiality of review organization's records," or the peer review privilege, the hospital did not argue the applicability of this privilege before the trial court. In that the hospital did not afford the trial court the opportunity to adjudicate this issue in the first instance, this Court will not address it. As we held in syllabus point 4 of

*State ex rel. State Line Sparkler of West Virginia v. Teach,* 187 W.Va. 271, 418 S.E.2d 585 (1992), " ' "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syllabus Point 2, *Duquesne Light Co. v. State Tax Department,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985)."

party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(emphasis added).

■■■ Originating at common law, the attorney-client privilege "has as its principal object the promotion of full and frank discourse between attorney and client so as to insure sound legal advice or advocacy." Syl. pt. 11, in part, *Marano v. Holland*, 179 W.Va. 156, 366 S.E.2d 117 (1988). *See also State ex rel. John Doe v. Troisi*, 194 W.Va. 28, 35–36, 459 S.E.2d 139, 146–47 (1995). Thus, confidential communications made by a client or an attorney[10] to one another are protected by the attorney-client privilege. *Canady*, 194 W.Va. at 441, 460 S.E.2d at 687.

■■■ The attorney-client privilege may only be successfully asserted if certain criteria are met:

'In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal advisor; (3) the communication between the attorney and client

10. The attorney-client privilege extends to those other than the attorney "who, at the attorney's direction, are aware of confidential information." *Canady*, 194 W.Va. at 441, 460 S.E.2d at 687. *See Troisi*, 194 W.Va. at 36, 459 S.E.2d at 147.

11. Of course, the attorney-client privilege " ' "extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." ' (Emphasis in original)." *Canady*, 194 W.Va. at 442, 460 S.E.2d at 688 (*quoting Upjohn Co. v. United*

must be [intended] to be confidential.' [11] Syllabus Point 2, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

Syl. pt. 7, *Canady, supra* (footnote added).

■■■ The hospital has failed to establish that either the incident report or the investigation report meets the elements required to successfully assert the attorney-client privilege. *Id. See* syl. pt. 4, *Canady, supra.* Specifically, the hospital has not demonstrated that Nurse Lemasters contemplated that an attorney-client relationship did or will exist between her and Mr. Bray when she prepared and then handed over the incident report to him. *See* syl. pt. 7, *Canady, supra.* The hospital further failed to establish that Nurse Lemasters sought any legal advice from Mr. Bray with regard to the report. *See Id.* Furthermore, the hospital has failed to articulate a clear argument as to how the elements of the attorney-client privilege have been met with regard to the investigation report.[12] As a result, the hospital has failed to carry its burden of establishing the attorney-client privilege, in all its elements, with regard to either the incident or investigation report. Syl. pt. 4, *Canady, supra.*

## V.

### *The Work Product Doctrine*

■■■ The second issue for our review is whether either the incident report prepared by Nurse Lemasters or the investigation report prepared by Mr. Bray is protected from discovery under the work product doctrine.[13]

*States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584, 595 and *Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962)).

12. Instead, the hospital's arguments with regard to the investigation report largely consisted of protection of this document under the work product doctrine. *See* discussion, *infra*.

13. "[A]lthough the work product doctrine creates a form of *qualified immunity* from disclosure, it does not label materials as 'privileged' and thus outside the scope of discovery under Rule 26(b)(1)." *McDougal v. McCammon*, 193 W.Va. 229, 237 n. 9, 455 S.E.2d 788, 796 n. 9 (1995) (*citing State ex rel. Chaparro v. Wilkes*, 190 W.Va. 395, 438 S.E.2d 575 (1993)). (emphasis added).

The roots of the work product doctrine can be traced to the United States Supreme Court decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) [14] in which the Court was required to ascertain "the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen." *Id.*, 329 U.S. at 497, 67 S.Ct. at 387, 91 L.Ed. at 455. The *Hickman* Court declared that

> [i]n performing his various duties, . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed . . . as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.

*Id.* 329 U.S. at 510–11, 67 S.Ct. at 393, 91 L.Ed. at 462.

The *Hickman* court further indicated, however, "that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are [not] necessarily free from discovery in all cases. Where relevant and *nonprivileged* facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Id.*, 329 U.S. at 511, 67 S.Ct. at 394, 91 L.Ed. at 462 (emphasis added). Thus, not unlike the limitations on the attorney-client privilege, *see* n. 11, *supra*, the work product doctrine "furnishe[s] no shield against discovery, by interrogatories or by deposition, of the *facts* that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2023 at 330–31 (2d ed. 1994) (footnote omitted). *See Hydramar Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 372 (E.D.Pa.1988); *Nutmeg Insurance Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 509 (W.D.La.1988).

▬ The work product doctrine first articulated in *Hickman*, *supra*, is now expressed in *W.Va.R.Civ.P.* 26(b)(3) and its federal counterpart.[15] *See* 8 Wright, Miller & Marcus, § 2023 at 329 (Rule 26(b)(3) "was designed as a largely accurate codification of the doctrine announced in the Hickman case and developed in later cases in the lower courts.") *See also In re Doe*, 662 F.2d 1073, 1078 (4th Cir.1981).

*W.Va.R.Civ.P.* 26(b)(3) provides, in pertinent part:

> (b) *Discovery scope and limits.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

14. *See Canady*, 194 W.Va. at 438, 460 S.E.2d at 684; *National Union Fire Insurance Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983–84 (4th Cir.1992); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987).

15. "Rule 26(b)(3) of the West Virginia Rules of Civil Procedure is identical to the federal rule, which was adopted in 1970 as a part of a larger reorganization of the discovery section of the Federal Rules of Civil Procedure." Syl. pt. 6, in relevant part, *In re Markle*, 174 W.Va. 550, 328 S.E.2d 157 (1984). Furthermore, according to Professors Wright, Miller and Marcus, thirty-four states have adopted Federal Rule of Civil Procedure 26(b)(3) verbatim; ten states have adopted rules which vary in language to federal rule 26(b)(3) but which are functionally similar. 8 Wright, Miller & Marcus, § 2023 at 334–35 n. 27 and 28. In analyzing *W.Va.R.Civ.P.* 26(b)(3), we therefore give due consideration to federal cases interpreting Rule 26(b)(3) in determining the meaning and scope of our rule. *State v. McGinnis*, 193 W.Va. 147, 158 n. 14, 455 S.E.2d 516, 527 n. 14 (1994); *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994).

. . . .

(3) Trial preparation: materials.—Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and *prepared in anticipation of litigation or for trial* by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney* or other representative of a party concerning the litigation.

(emphasis added).

■ Rule 26(b)(3) distinguishes between *fact* and *opinion* work product

with regard to the level of necessity that has to be shown to obtain their discovery. Where *factual* work product is involved, the party demanding production must show 'a substantial need' for the material and that he cannot obtain the same or its equivalent through other means 'without undue hardship.' Where *opinion* work product is involved, the showing required to obtain discovery is even stronger since the rule states that 'the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories.' Rule 26(b)(3).

*In re Markle,* 174 W.Va. 550, 556, 328 S.E.2d 157, 163 (1984) (footnotes omitted and emphasis added). *See Id.* at syl. pt. 7; *Canady,* 194 W.Va. at 445, 460 S.E.2d at 691 (*citing In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994)). Indeed, " 'opinion work product enjoys a nearly absolute immunity

and can be discovered in only very rare and extraordinary circumstances.' " *Republican Party of North Carolina v. Martin,* 136 F.R.D. 421, 429 (E.D.N.C.1991), *aff'd in part, rev'd in part* and *remanded, on other grounds,* 980 F.2d 943 (4th Cir.1992), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993) (*quoting In re Doe,* 662 F.2d 1073, 1080 (4th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982)).

■ On the other hand, "documents prepared in the regular course of the compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation" are not protected from discovery as work product. *Fann v. Giant Food, Inc.,* 115 F.R.D. 593, 596 (D.D.C.1987). *See Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987) (According to the advisory committee notes to Rule 26(b)(3), " 'materials assembled in the ordinary course of business . . . or for other nonlitigation purposes are not under the qualified immunity provided by [the rule].' "); 8 Wright, Miller & Marcus § 2024 at 346.

■ Determination of whether a document was prepared in anticipation of litigation or in the ordinary course of business is a factual one: [16]

'[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.'

*Simon,* 816 F.2d at 401 (*quoting* 8 Wright, Miller & Marcus § 2024 at 345–46). *See Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1118–19 (7th

---

16. "As in most factual settings, there should not be any *per se* rules that would dictate a finding that the work product doctrine should apply. Instead, a case-by-case approach is preferable."

*Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 571 n. 11 (S.D.Ind.1990). *See also Canady,* 194 W.Va. at 444, 460 S.E.2d at 690.

Cir.1983); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979); *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir.1979); *Cochran v. St. Paul Fire and Marine Ins. Co.*, 909 F.Supp. 641, 645 (W.D.Ark.1995); *Bogan v. Northwestern Mutual Life Ins. Co.*, 163 F.R.D. 460, 463 (S.D.N.Y.1995); *In re Leslie Fay Cos., Inc. Securities Litigation*, 161 F.R.D. 274, 280 (S.D.N.Y.1995); *Pippenger v. Gruppe*, 883 F.Supp. 1201, 1211 (S.D.Ind.1994); *Bieter Co. v. Blomquist*, 156 F.R.D. 173, 180 (D.Minn. 1994); *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D.Ohio 1993); *Henderson*, 131 F.R.D. at 570; *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D.Ind.1991).

■ To resolve whether the work product doctrine will protect either or both the incident report and the investigation report from discovery, we must determine, as a threshold matter, whether the documents were prepared in anticipation of litigation. *See Binks*, 709 F.2d at 1118.[17]

■ According to the majority of courts, "[a]n inquiry to determine whether a document was prepared in anticipation of litigation should focus on the ' "primary motivating purpose behind the creation of the document." ' *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985) (*quoting United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981))." *Gold Standard, Inc. v. American Barrick Resources Corp.*, 805 P.2d 164, 170 (Utah 1990). *See United States v. El*

Paso Co., 682 F.2d 530, 545 (5th Cir.1982) (" '[L]itigation need not be imminent ... as long as the *primary motivating purpose* behind the *creation* of the document was to aid in possible future litigation.' " (*quoting Davis*, 636 F.2d at 1040) (emphasis added)); *Loctite Corp. v. Fel–Pro, Inc.*, 667 F.2d 577, 582 (7th Cir.1981) ("Only where the document is primarily concerned with legal assistance" is it work product.) *See also Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 144 F.R.D. 600, 605 (D.Mass. 1992); *United States v. Rosenthal*, 142 F.R.D. 389, 393 (S.D.N.Y.1992); *McMahon v. Eastern S.S. Lines, Inc.*, 129 F.R.D. 197, 198–99 (S.D.Fla.1989); *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal.1987); *Scott Paper Co. v. Ceilcote Co., Inc.*, 103 F.R.D. 591, 595 (D.Maine 1984).[18] Accordingly, work product protection will not be afforded a document " 'if the primary purpose behind the creation of the document is not to assist in pending or impending litigation[.]' *Gulf Oil Corp.*, 760 F.2d at 296." *Gold Standard*, 805 P.2d at 170. Indeed, "[t]he mere possibility that litigation may occur or even 'the mere fact that litigation does eventually ensue' is insufficient to cloak materials with the mantle of work product protection.' " *Id.* (*quoting Binks*, 709 F.2d at 1113). *See National Union Fire Insurance Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992).

As the court explained in *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982):

**17.** In *In re Markle*, 174 W.Va. at 557, 328 S.E.2d at 164, we concluded that certain investigative reports fell within the scope of Rule 26(b)(3) since the investigation and preparation of the reports "ultimately lead to a trial[.]" This Court has not however defined what is meant by the phrase "anticipation of litigation," though Justice Franklin D. Cleckley, in his treatise, *Handbook on Evidence for West Virginia Lawyers,* has indicated that "to be protected by work product discovery privileges, the document must be prepared because of the prospect of litigation when the preparer faces an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation. *See National Union Fire Ins. v. Murray Sheet Metal,* 967 F.2d 980 (4th Cir.1992)." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 5–4(E)(3) at 569 (3d ed. 1994). "[I]nformation gathered or acquired in 'anticipation of litigation' ... is ambiguously defined as

after there is good cause to believe a suit will be filed." *Id.*

**18.** *But see Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594 (S.D.Ind.1993), *aff'd,* 852 F.Supp. 704 (1994), rejecting the "primary motivating purpose" standard and more narrowly construing the work product doctrine:

If a document or thing would have been created for non-litigation uses regardless of its intended use in litigation preparation, it should not be accorded work product protection. Because the document would have been created for non-litigation reasons anyway, disclosure of the information therein would not disadvantage its creator, or advantage his opponent, by revealing the creator's legal strategy or tactics; thus, the document's release in discovery would not contravene the policies supporting the work product rule.

*Id.* at 604.

The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible in civil pre-trial discovery. As stated in *Soeder v. General Dynamics Corporation*, 90 F.R.D. 253 (D.Nev.1980) the distinction between whether defendant's 'in house' report was prepared in the ordinary course of business or was 'work product' in anticipation of litigation is an important one. 90 F.R.D. at 255. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.... A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business. Some recent cases have suggested the need for objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report before the work product doctrine becomes applicable. *See e.g. Fine v. Bellefonte Underwriters Insurance Co.*, 91 F.R.D. 420 (S.D.N.Y. 1981); *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115 (N.D.Ga.1972). While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.

*See Binks*, 709 F.2d at 1119.

We hold that to determine whether a document was prepared in anticipation of litigation and, is therefore, protected from disclosure under the work product doctrine, the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation.

■ The incident report prepared, in this case, by Nurse Lemasters immediately after Mrs. Becker fell in the emergency room was completed, not for purposes of litigation, but in the ordinary course of the hospital's business. As described earlier, Nurse Lemas-

ters testified that she routinely prepares such reports "*[a]ny time* that there's any kind of an incident … *anything* that's out of the ordinary[.]" (emphasis added). Moreover, pursuant to the hospital's written policy and guidelines, incident reports are more than just "a resource for claims management." Such reports "assist in determining levels of care that are being provided[;]" "enhance the care provided[;]" and "assist in providing a safe environment." Thus, incident reports at this hospital, including the one at issue, are prepared in connection with *any* "incident"—that is, "*any* event that occurs during the hospital stay of a patient, visitor or volunteer which is non-routine (i.e. an accident or mistake) or has some potential for physical or mental injury[.]"

■ Moreover, it is of no consequence that Nurse Lemasters gave the completed incident report directly to Mr. Bray immediately after she wrote it. The incident report, having been prepared in the ordinary course of business, does not become work product merely because it was forwarded to legal counsel. *See Clark v. Norris*, 226 Mont. 43, 734 P.2d 182, 187 (1987) ("A privilege cannot be created in a subject matter merely by transmitting it to an attorney."); *St. Louis Little Rock Hosp. Inc. v. Gaertner*, 682 S.W.2d 146, 151 (Mo.Ct.App.1984) ("A document which is not privileged does not become privileged by the mere act of sending it to an attorney. McCormick on Evidence, § 96, p. 233 (3d ed. 1984); 8 Wigmore on Evidence, § 2307, p. 592–593 (McNaughton Rev.1961).")

We conclude that the primary motivating purpose behind the creation of this incident report was not to assist in probable future litigation. The hospital has thus failed to carry its burden of establishing that the incident report is protected from discovery under the work product doctrine. *See* syl. pt. 4, *Canady, supra.*

■ The investigation report prepared by Mr. Bray, on the other hand, is more problematic. Upon careful examination of this report, and without divulging its contents, this Court finds that the primary motivating purpose behind Mr. Bray's creation of this document was to assist in probable fu-

ture litigation and is, therefore, work product. Suffice it to say that the report reflects that Mr. Bray conducted the investigation primarily out of concern for the hospital's exposure to liability. The report further reflects conversations with plaintiff's counsel and with hospital personnel specifically on the liability issue.

We previously stated that "Rule 26(b)(3) of the West Virginia Rules of Civil Procedure makes a distinction between factual and opinion work product with regard to the level of necessity that has to be shown to obtain their discovery." Syl. pt. 7, *In re Markle, supra.* Indeed, as we indicated above, fact work product, ordinarily, may be discovered upon a showing of "substantial need" and "undue hardship to obtain the substantial equivalent by other means." *W.Va.R.Civ.P.* 26(b)(3). We further indicated that opinion work product however is discoverable only where "very rare and extraordinary circumstances" are present. *Republican Party of North Carolina,* 136 F.R.D. at 429. In this case then the trial court must now review the investigation report, which we have concluded to be work product, and determine whether the report constitutes *fact* work product or *opinion* work product, recognizing that it may conclude that *portions* of the report are fact work product while other portions are opinion work product.

We note, however, that under the facts of this case, whether the trial court finds all or part of the investigation report to be fact work product is significant *not* because plaintiff will then be required to show substantial need and undue hardship in order to discover it. Indeed, in this case, the contrary is true. As our discussion below in section VII will explain, when it designated its general counsel as a witness pursuant to plaintiff's *W.Va. R.Civ.P.* 30(b)(6) notice of deposition, the hospital waived the work product doctrine *with regard to the matters about which its general counsel was designated to testify. See* Discussion, *infra.* According to plaintiff's Rule 30(b)(6) notice of deposition, the matters about which the hospital's general

counsel was designated to testify were *factual* in nature. Thus, to the extent the trial court concludes that all or portions of the investigation report are *fact* work product, plaintiff is not required to show substantial need and undue hardship because such fact work product has been waived.[19]

## VI.

### *Designation of Counsel under Rule 30(b)(6) Notice of Deposition*

As stated above, *W.Va.R.Civ.Pro.* 30(b)(6) provides, in relevant part, that "[a] party may in his notice … name as the deponent a … corporation … and describe with reasonable particularity the matters on which examination is requested. In that event, *the organization so named shall designate* one or more officers … or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify…. The persons so designated shall testify as to matters known or reasonably available to the organization." (emphasis added). The final issue before this Court is whether, by designating its general counsel as a witness pursuant to plaintiff's Rule 30(b)(6) notice of deposition, the hospital waived the attorney-client privilege and the work product doctrine.

As discussed earlier, the hospital designated Daniel Vannoy, its current general counsel, to testify concerning twelve of the twenty-three topics set forth in plaintiff's Rule 30(b)(6) notice of deposition. During the course of the deposition, Mr. Vannoy refused to answer questions regarding the contents of the incident and investigation reports, as well as questions regarding the substance of conversations he had with Nurse Lemasters, on the grounds that all of these were protected by the attorney-client privilege and the work product doctrine.

By order of November 1, 1996, the circuit court ordered Mr. Vannoy to testify as to the substance of conversations he had with vari-

---

**19.** For reasons discussed below, in section VII, should the trial court determine that all or portions of the investigation report are *opinion* work product, such work product is *not* waived and is

not discoverable unless plaintiff can show that very rare and extraordinary circumstances are present. *See Republican Party of North Carolina,* 136 F.R.D. at 429.

ous hospital personnel.[20] The court specifically found "that by producing Mr. Vannoy as a witness, in response to a Notice of Deposition under Rule 30(b)(6) ... [the hospital] had waived both attorney-client and attorney work product privileges[.]"

■ Rule 30(b)(6) was added to the federal rules in 1970 to permit "a party to name a corporation or other form of organization as a deponent in the notice of examination and to describe in the notice the matters about which discovery is desired. The organization is then obliged to designate natural persons to testify on its behalf." Federal Rule of Civil Procedure 30(b)(6), advisory committee's notes, in pertinent part, 52 F.R.D. 79, 81 (1970). *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, § 2103. The purpose of Rule 30(b)(6) is

> to avoid the difficulties encountered by both sides when the examining party is unable to determine who within the corporation would be best able to provide the information sought, to avoid the 'bandying' by corporations where individual officers disclaim knowledge of facts clearly known to the corporation, and to assist corporations which found an unnecessarily large number of their officers and agents were being deposed. Rule 30(b)(6) gives the

corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf. Fed.R.Civ.P. 30(b)(6) advisory committee's note. For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters. *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C.), *aff'd* 166 F.R.D. 367 (1996). *See S.E.C. v. Morelli*, 143 F.R.D. 42, 44–45 (S.D.N.Y.1992); *Protective National Insurance Co. of Omaha v. Commonwealth Insurance Co.*, 137 F.R.D. 267, 278 (D.Neb.1989).

■ At a Rule 30(b)(6) deposition, the testimony elicited "represents the *knowledge of the corporation, not* of the individual deponents. The designated witness is 'speaking for the corporation,' and this testimony must be distinguished from that of a 'mere corporate employee' whose deposition is not considered that of the corporation and *whose presence must be obtained by subpoena*." *Taylor*, 166 F.R.D. at 361 (emphasis added).

■ In the present case, Mr. Vannoy's presence at the deposition was *not* obtained by subpoena expressly requesting his appearance and testimony.[21] Rather, the hos-

---

20. In that the trial court also ruled that the incident and investigation reports were not protected by either the attorney-client privilege or the work product doctrine, and were, therefore, discoverable, the court's order did not address whether Mr. Vannoy should be required to testify about them.

21. We are not presently concerned with the situation in which one party has served a deposition subpoena expressly on an opposing party's counsel. However, many courts have discussed the negative implications of allowing such depositions to take place. These courts, while recognizing that the rules of civil procedure do not prohibit the taking of opposing counsel's deposition, *see* Rule 30(a) (a party may take the deposition of "any person"), were nevertheless concerned that

> the increasing practice of taking opposing counsel's deposition [is] a negative development in the area of litigation, and one that should be employed only in limited circumstances.... Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profes-

sion, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays *to resolve work-product and attorney-client* objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation.

(emphasis added). *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986). *See Morelli*, 143 F.R.D. at 47 (" '[D]eposition of the attorney [usually] merely embroils the parties and the court in controversies over the attorney-client privilege and more importantly, involves forays into the area most protected by the work product doctrine—that involving an attorney's mental impressions or opinions.' " (citation omitted)); *Hay & Forage Industries v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990). Thus, some courts will only allow the taking of opposing counsel's deposition where it is shown that no other means exist to obtain the information, that the information sought is relevant and nonprivileged and that the information is crucial to preparation of the case. *Shelton*, 805 F.2d at 1327; *Hay & Forage Industries*, 132 F.R.D. at

pital voluntarily designated him to testify on its behalf with regard to 12 topics enumerated in the plaintiff's Rule 30(b)(6) notice of deposition. For example, two of the topics about which Mr. Vannoy was designated to testify were topic numbers one and two, respectively: "The factual bases of each defense set forth in Defendant's Answer to the Complaint" and "[t]he factual matters discussed in Defendant's answers to interrogatories in this case, including, but not limited to, the circumstances surrounding the fall that Mrs. Becker suffered at United Hospital on November 3, 1994."

Though the hospital contends that Mr. Vannoy was its only logical designee to answer these questions because he was the person who gathered the information necessary to respond to the complaint and the interrogatories, Rule 30(b)(6) does *not* require that the corporation's designee have personal knowledge of or have been personally involved in the examination topics. *See Taylor*, 166 F.R.D. at 361 *(citing Buycks–Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 338, 343 (N.D.Ill.1995); *Morelli*, 143 F.R.D. at 45.) The rule merely requires that the designee be sufficiently prepared to give knowledgeable, complete and binding answers on behalf of the corporation. *Id. See Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb.1995); *Protective National Insurance*, 137 F.R.D. at 278.

In this case, Mr. Vannoy became employed by the hospital approximately seven months after the events giving rise to this litigation occurred. His knowledge of relevant events therefore is limited to what he learned from interviews and conversations with hospital personnel and from document review. *See Taylor*, 166 F.R.D. at 361 (A corporation's Rule 30(b)(6) designee should prepare for deposition "to the extent matters are reason-

ably available, whether from documents, past employees, or other sources.") As the plaintiff correctly points out, the hospital could have designated and properly prepared *someone other than its general counsel* to testify at the Rule 30(b)(6) deposition. Instead, the hospital deliberately designated its general counsel to speak for the corporation and thus, risked the possibility that the plaintiff would delve into privileged matters relevant to the topics about which the general counsel was designated to testify. Indeed, to allow a corporation or organization that chooses to designate counsel to testify at a Rule 30(b)(6) deposition to refuse to answer certain questions based upon the attorney-client privilege and the work product doctrine would obviously confer unfair advantage on them and would be contrary to the spirit of Rule 30(b)(6) and the discovery process.

We hold therefore that when a corporation, partnership, association or governmental agency designates an attorney to testify on its behalf at a deposition pursuant to *West Virginia Rule of Civil Procedure* 30(b)(6), such corporation, partnership, association or governmental agency waives the attorney-client privilege and work product doctrine with regard to matters, set forth in the notice of deposition, about which the attorney was designated to testify.

Our review of plaintiff's Rule 30(b)(6) notice of deposition reveals and plaintiff acknowledges that Mr. Vannoy was designated to testify about "the basis of his knowledge of the *facts* " surrounding Mrs. Becker's fall at the hospital. Because the matters about which Mr. Vannoy was designated to testify were *factual* in nature, it is the fact work product with regard to these matters which the hospital waived when it designated him to testify.[22]

689; *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990). *But see In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 437–38 (E.D.Pa.1981) ("The fact that the proposed deponent is an attorney for one of the parties in the case is clearly not enough, by itself, to justify granting in full the motion for a protective order. If the questions to be asked of [the deponent/attorney] delve into privileged areas then his recourse will be to object and refuse to answer. Such an objection and refusal to

answer should of course be predicated upon a sufficient demonstration that the matter inquired into is privileged." (citations omitted)).

**22.** Though the hospital did not waive opinion work product in this case, there are instances in which "the near inviolability of opinion work product" has been penetrated. *Vaughan Furniture Co., Inc. v. Featureline Mfg., Inc.*, 156 F.R.D. 123, 128 (M.D.N.C.1994). "A party waives opinion work product protection of its attorney by

**334**

### VII.

In summary, we hold that the incident report prepared by Nurse Lemasters is not protected from discovery by either the attorney-client privilege or the work product doctrine.

We further hold that the investigation report is not protected by the attorney-client privilege. While the investigation report prepared by Mr. Bray constitutes work product, it is for the trial court to determine whether the report is fact work product or opinion work product. Should the trial court conclude that either all or portions of the investigation report is *fact* work product, such fact work product is discoverable in this case without a showing of substantial need and undue hardship by plaintiff because the hospital waived both the attorney-client privilege and work product doctrine with regard to the matters about which the hospital's general counsel was designated to testify.

Likewise, because the hospital waived both the attorney-client privilege and the work product doctrine with regard to the matters about which its general counsel was designated to testify, the substance of conversations Mr. Vannoy had with various hospital personnel, which helped to form the basis of his knowledge of the facts, are not protected from discovery by either the attorney-client privilege or the work product doctrine. The hospital's petition for writ of prohibition is therefore granted as moulded.

Writ granted as moulded.

naming its attorney as an expert witness ... to the extent that the opinions relate to the subject matter of the opinions about which the expert will testify at trial." *Id. See Id.* at n. 4 ("[W]hen the 'activities and advice of counsel' became an issue which is crucial to the matter of resolving claims of bad faith settlement under an insurance contract, this constitutes another exception to the near absolute protection given to opinion work product.... In such instance, it appears that the attorney's very opinions will in some way affect the fact-finding process." (*citing Charlotte Motor Speedway Inc. v. International Ins. Co.*, 125 F.R.D. 127, 130 (M.D.N.C.1989))).